# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| KLAUSNER TECHNOLOGIES, INC., § § § Plaintiff, § § vs. § § ALCATEL-LUCENT USA, INC., et al., § § Defendants. § § § | CASE NO. 6:11-CV-231 |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the disputed claim terms in U.S. Patent Nos. 5,572,576 ("the '576 Patent) and 5,283,818 ("the '818 Patent) (collectively, "the patents-in-suit.")

## BACKGROUND

On May 10, 2011, Klausner Technologies, Inc. ("Klausner") filed a complaint alleging Alcatel-Lucent USA, Inc. and 24 other parties infringed the '576 Patent, entitled "Telephone Answering Device Linking Displayed Data with Recorded Audio Message," and the '818 Patent, entitled "Telephone Answering Device Linking Displayed Data with Recorded Audio Message."[1] As the titles suggest, the patents-in-suit generally relate to systems, devices, and methods for answering telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device. On January 29, 2013, the Court conducted a

---

[1] Defendants Primus Telecommunications, Inc., Primus Telecommunications Group, Inc., PAETEC Communications, Inc., PAETEC Corp., and PAETEC Holding Corp. (collectively, "Defendants") were the only remaining Defendants in the case when the Court conducted a *Markman* hearing.

*Markman* hearing. All disputed claims presented below are found in claims 3, 4, 18, and 19 in the '576 Patent and claim 10 of the '818 Patent.

The Court notes it has already construed many of the terms at issue in a previous case that involved the '576 Patent. *See Klausner Technologies, Inc. v. Vonage Holdings Corp.*, No. 2:06-cv-275, 2007 U.S. Dist. LEXIS 57604 (E.D. Tex. Aug. 07, 2007) ("*Vonage*").

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For

example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## CLAIM TERMS

At the hearing, the parties agreed that "selective retrieval" should be construed to mean "retrieval based on user selection." *Markman* Hr'g Tr. 33:16–23, Jan. 29, 2013. Additionally, the parties originally disputed the term "selectively directly retrieving," but Defendants withdrew their construction. *See* Docket No. 341 at 1; *Markman* Hr'g Tr. 32:11–23.

## CONSTRUCTION OF DISPUTED TERMS

**telephone answering device**

Klausner proposes "an electronic device for answering an incoming telephone call." Defendants propose "a telephone answering machine, not including a computer-based voice messaging system which utilizes a central computer."[2] Klausner proposes the same construction

---

[2] Initially, PAETEC Communications, Inc., PAETEC Corp., and PAETEC Holding Corp. (collectively, "PAETEC") had proposed a different construction than Primus Telecommunications, Inc. and Primus Telecommunications Group, Inc., however, at the *Markman*, counsel for PAETEC represented that PAETEC no longer proposed separate constructions for any of the disputed claim terms. *Markman* Hr'g Tr. 32:11–23.

adopted by the Court in *Vonage* whereas Defendants seek to exclude a centralized computer-based voice messaging system from the construction. *See Vonage*, 2007 U.S. Dist. LEXIS 57604, at *16; Docket No. 341 at 8–14.

Defendants contend that during prosecution when distinguishing a prior art reference ("the Ertz reference"), the patentee stated its invention was different from a computer-based voice messaging system. Docket No. 341 at 12–14. Even though the remarks were made during the prosecution of the parent application of the '818 and '576 Patents, Defendants argue these remarks should be considered, because the application and the patents-in-suit contain almost identical terminology. *Id*. at 13.[3] Klausner counters that this argument has already been dismissed by the Court in *Vonage*, when it stated it "did not find this portion of the prosecution history [regarding the Ertz reference] to disclaim computer based voice messaging systems, but rather to be addressing the examiner's conclusion that certain claims were obvious in light of the referenced prior art." 2007 U.S. Dist. LEXIS 57604, at *14–15. During prosecution, claims 11, 12 and 17 of the parent application were rejected as being obvious in light of the Ertz reference and U.S. Patent No. 4,304,968. Docket No. 341, Exhibit 13, Resp. to Office Action at 4. These claims were directed towards "telephone answering machines," not "telephone answering devices," which were claimed separately in the parent application. *See* U.S. Patent No. 5,390,236 claim 1. Thus, when the patentee made remarks to overcome the obviousness rejection, the remarks were about a different term, which is not at issue in this case. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007) (the use of different terms is evidence that the patentee considered the terms to have distinctly different meanings). Even if the terms were identical, which Defendants admit they are not, the Court has already found there was no clear disavowal of claim scope during prosecution. *Vonage,* 2007 U.S. Dist. LEXIS 57604, at *14–15.

---

[33] The parent application issued as U.S. Patent No. 5,390,236.

Additionally, Defendants argue that computer-based voice messaging systems were not disclosed in the specification and that a person of ordinary skill in the art would not understand the term to encompass this embodiment. Docket No. 341 at 8–11. Defendants contend that the specification only describes a conventional telephone answering machine and not a centralized computer-based voice messaging system. *Id.* at 11 (citing '576 Patent col. 1:1–4; *id.* col. 3:22–23; *id.* col. 3:55–56). Defendants also argue that at the time of the alleged invention, one of ordinary skill would have only understood the term to mean a conventional telephone answering machine. *Id.* at 8–10 (citing several patents which use the term "telephone answering machine" and "telephone answering device" interchangeably). Defendants allege that the claim language, which states the telephone answering device is "being coupled to a telephone," supports this conclusion, because computer-based systems are not coupled to a telephone. *Id.* at 8–9; *see* '576 Patent col. 13:45. Klausner counters that Defendants are attempting to limit the scope the claimed invention to only the preferred embodiments, even though the specification discloses other embodiments. Docket No. 345 at 4–5 (citing '576 Patent col. 1:24–27; *id*. col. 2:41–3:16).

While Defendants assert that one skilled in the art would understand "telephone answering device" to mean "telephone answering machine," the patents-in-suit distinguish the standard telephone answering machine from the claimed invention, explaining the several disadvantages of the standard telephone answering machine in the Background Sections of the patents-in-suit. '576 Patent col. 1:24–2:38; '818 Patent col. 1:16–2:28. Additionally, the patents-in-suit never limit the claimed inventions to exclude a computer-based voice messaging system which utilizes a central computer. *Cf. Retractable Techs., Inc. v. Becton Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (limiting the scope of claims when the specification expressly limited the term to a particular embodiment). Thus, there is no reason to exclude this

particular embodiment from the construction. Accordingly, the Court construes "telephone answering devices" as "an electronic device for answering an incoming telephone call."

**coupled to a telephone**

Klausner proposes "connected to a telephone receiving an incoming call." Defendants propose "connected to the called party's telephone in a manner in which an incoming call can be detected." Klausner proposes the same construction adopted by the Court in *Vonage*. *See Vonage*, 2007 U.S. Dist. LEXIS 57604, at *17. Defendants argue "connected" alone does not sufficiently describe the term, and propose including language regarding the ability to detect an incoming call in the construction. Docket No. 341 at 15. The claim language recites "a telephone answering device having a memory and being coupled to a telephone." '576 Patent col. 13:44–45. Because the specification describes the device as having the ability to detect an incoming call, Defendants argue the term must be construed to encompass this feature. *Id.* at 15–16.

The Court has previously rejected including the limitation "connected to a called party's telephone," noting the specification did not support this limitation. *Vonage*, 2007 U.S. Dist. LEXIS 57604, at *16–17. Regarding "in a manner in which an incoming call can be detected," there is no support to limit the claim as Defendants propose. The specification specifically notes that the figures are merely preferred embodiments and "these embodiments are shown only for the purpose of illustration and not for the purpose of limitation." '818 Patent col. 12:61–64; '576 Patent col. 12:61–64. As the Court stated previously, "[t]he patent specification simply describes the telephone answering devices as being connected to the telephone line that receives an incoming call." *Vonage*, 2007 U.S. Dist. LEXIS 57604, at *17. Accordingly, the Court construes "coupled to a telephone" as "connected to a telephone receiving an incoming call."

**first signals**

Klausner proposes "information," while Defendants propose "electronic signals generally unique to the caller which are received and read by the telephone answering device." The parties dispute whether the term encompasses all "information" or the term should be limited. Klausner proposes the same construction adopted by the Court in *Vonage*, while Defendants argue the construction should be more detailed to truly capture the scope of the term. *See Vonage*, 2007 U.S. Dist. LEXIS 57604, at *18; Docket No. 341 at 17. Specifically, Defendants propose limiting the claim to electronic information that is unique to a caller and can be read by the telephone answering device. Docket No. 341 at 17. Defendants argue that the specification supports their proposal, because the specification teaches that these signals are "generally unique to the caller," received by the telephone answering device, and are read by the telephone answering device. *Id.* (citing '576 Patent col. 9:53; *id.* col. 11:41–42; '818 Patent col. 9:32). Defendants raise similar arguments raised previously in *Vonage*. 2007 U.S. Dist. LEXIS 57604, at *18. In *Vonage*, the Court explained that including limitations that the information is unique to the caller and can be read or recognized by the telephone answering device were ambiguous and should be not be included in the construction. *Id.* For the same reasons stated in *Vonage*, the Court construes "first signals" as "information."

**corresponding voice message**

Klausner proposes "the voice message received by the telephone answering device with the first signal." Defendants propose "the voice message received by the telephone answering device after it received the first signal." The primary dispute between the parties is whether a voice message must be received by the telephone answering device after it receives the first signal. Defendants argue the term should be limited, because the specification explains that it is

8

only after a voice signal is detected that the voice record routine begins. Docket No. 341 at 18 (citing '576 Patent col. 6:60–62). Therefore, according to Defendants, a signal must be detected before a voice recording can begin, otherwise the claimed invention is inoperable. *Id.* Klausner counters that a term must be construed according to its ordinary meaning, and the Court should adopt its prior construction in *Vonage*. Docket No. 337 at 5; Docket No. 345 at 9–10.

Defendants argue there must be a temporal limitation included in the construction, however there is nothing in the intrinsic record to support this limitation. The claim language itself does not require receiving the first signals prior to the voice message. Additionally, while the specification describes an embodiment wherein a signal is first detected, a term should not be limited to particular embodiment unless it is clear that is the intent of the patentee. *See Phillips*, 415 F.3d at 1323. Accordingly, the Court construes "corresponding voice message" as "the voice message received by the telephone answering device with the first signal."

**user remote access device**

Klausner proposes "a device that can gain access to voice messages stored on the telephone answering device from a remote location." Defendants contend that the term is expressly defined in claim 1 and Klausner is estopped from asserting otherwise.

The primary dispute between the parties is whether "user remote access device" is defined by claim 1 such that Klausner cannot argue a different construction. Defendants argue the term must be defined as it is in claim 1, because the term is not discussed in the specification. If the term is construed as it defined in claim 1, then the term is a means-plus-function term that must include a "means for receiving said first signals from said telephone answering device such that said first signals are available upon user demand." Docket No. 341 at 21 (citing '576 Patent col. 13:19–21). Defendants note that the structure disclosed for performing this function

9

includes a telephone receiver, a telephone link, and a telephone coupler. *Id.* (citing '576 Patent col. 10:37–43; '576 Patent col. 10:66–11:10). Defendants argue that the prosecution history supports their position. *Id.* at 20. During prosecution, the patentee modified claims 1 and 3, which both contain the term "user remote access device" in a similar fashion, but did not modify the claims reciting the "remote access device" limitation. Defendants argue these amendments demonstrate that the patentee considered "user remote access device" in both claims to have the same meaning. Klausner counters that it would be improper to import limitations from one independent claim to another independent claim. Docket No. 345 at 11. Therefore, Klausner proposes the same construction adopted in *Vonage*. 2007 U.S. Dist. LEXIS 57604, at *26.

The Court has already addressed Defendants' concerns in *Vonage*. In *Vonage,* Defendant proposed that "user remote access device" should be defined in all claims as it was defined in claim 1. 2007 U.S. Dist. LEXIS 57604, at *19. However, the Court explained that claim 1 does not define a "user remote access device" or a "remote access device." *Id.* at *21. Claim 1 instead "sets forth elements included in the 'user remote access device' for purposes of that claim. A claim's elements establish the boundaries of that claim . . . rather than define a particular claim term." *Id.* at *21–22 (citing *Innova/PureWater Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court continued and noted that the other asserted claims "set forth different elements of a 'remote access device' but none of these claims purport to define the term." *Id.* at *22. Defendants here do not cite to any authority for holding that means-plus-function elements found in a distinct independent claim should be used to define a term found in another independent claim.

Accordingly, the Court construes "user remote access device" as "a device that can gain access to voice messages stored on the telephone answering device from a remote location."

**predetermined list of names**

Klausner proposes that no construction is required, while Defendants propose "a list of caller names stored in memory for later retrieval." Defendants argue that the term should be construed to avoid potentially confusing the jury, who may or may not understand the meaning of the term. Docket No. 341 at 24.

Defendants argue that the specification discloses that the list of caller names is entered by the user and later retrieved, and thus propose a construction which clarifies that the list of caller names is determined before the list is retrieved. *Id.* at 24–25 (citing '576 Patent col. 2:46–48; *id.* col. 2:66–3; *id.* col. 8:21–23; *id.* col. 9:23–27; *id.* col. 11:54–58; '818 Patent col. 2:35–38; *id.* col. 2:52–56; *id.* col. 7:67–8:1; col. 9:1–5). However, Defendants' proposal goes beyond the claim language and improperly imports limitations not found in the claim itself. For example, while a name included in the list may be later retrieved, the specification does not require that the entire list be retrieved later. Additionally, while a person may be included in the list, there is a possibility that the person may never actually be a caller. The claim language itself is clear and would be easily understandable to a juror in the context of the claims at issue. Accordingly, no construction is required.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table in Appendix A.

**So ORDERED and SIGNED this 20th day of May, 2013.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

## APPENDIX A

| Claim Term | Court's Construction |
|---|---|
| telephone answering device | an electronic device for answering an incoming telephone call |
| coupled to a telephone | connected to a telephone receiving an incoming call |
| first signals | information |
| corresponding voice message | the voice message received by the telephone answering device with the first signal |
| user remote access device | a device that can gain access to voice messages stored on the telephone answering device from a remote location |
| predetermined list of names | plain/ ordinary meaning |